UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALFRED CUNHA,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, et al.,<br><br>Defendants. | **CASE NO. 1:17-cv-00094-DAD-MJS (PC)**<br><br>**ORDER DENYING MOTION FOR COUNSEL**<br><br>**(ECF No. 11)**<br><br>**ORDER DENYING MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT**<br><br>**(ECF No. 12)**<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 10)**<br><br>**THIRTY DAY DEADLINE** |

Plaintiff is a pre-trial detainee proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. On March 22, 2017, the Court screened Plaintiff's civil rights complaint and found it stated no cognizable claims. (ECF No. 9.) Plaintiff was directed to file an amended complaint within thirty days. Plaintiff's first amended complaint is before the Court for screening. (ECF No. 10.) Plaintiff has

declined Magistrate Judge jurisdiction. (ECF No. 4.) No other parties have appeared in the action.

On May 11, 2017, Plaintiff submitted two additional filings: a request for the appointment of counsel (ECF No. 11) and a motion for a twenty-one day extension of time to file an amended complaint (ECF No. 12). Both filings are addressed herein.

## I. Motion for Counsel

The Court explained in its prior screening order that Plaintiff does not have a constitutional right to appointed counsel. (ECF No. 9 at 4.) Plaintiff's renewed motion for counsel does not present any new grounds or show exceptional circumstances. His request will be denied, albeit without prejudice.

## II. Request for Extension of Time

On May 11, 2017, Plaintiff filed a motion for a twenty-one day extension of time to file an amended complaint. (ECF No. 12.) Therein, Plaintiff requested a twenty-one day extension from the date of May 8, 2017 to file additional documentation in support of his first amended complaint.

As explained in further detail below, Plaintiff's claims are considered on the basis of his complaint alone and need not refer to outside documentation. Therefore, Plaintiff's request for an extension will be denied.

## III. Screening Requirement

The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Prisoners may bring § 1983 claims against individuals acting "under color of state law." See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## V. Plaintiff's Allegations

Plaintiff's claims stem from his incarceration in the Stanislaus County Jail in Modesto, California. He brings this action against the California Forensic Medical Group ("CFMG"); the Stanislaus County Jail ("the Jail"); the General Service Agency ("GSA"); Lt. Mike Dailey; Sgt. Chad Blake; retired Sgt. Vince Truffa; Nurse Barbara; Practitioner Tonya; Nurse Joe C., and Practitioner Sunny Bassi.

His allegations may be summarized essentially as follows:

### A. Cause of Leg Injury

Plaintiff was assigned to jail operations by Defendants Truffa, Dailey, and Blake.

3

He was responsible for refurbishment, upkeep, and maintenance in and around the Jail. Plaintiff held this position from May 2012 to September 2016.

Truffa, Dailey, and Blake assigned Plaintiff to run electrical from the roof of the jail down to the yard roof to power electric gates. Plaintiff was assigned to work with Joe Silva of GSA, an employee of Stanislaus County who maintains all county buildings. Silva is in charge of maintenance at the Jail.

In order to run the electrical, Plaintiff was required to lower himself through a 24 inch by 24 inch access panel and climb down a six foot step ladder. One day, as Plaintiff placed his right foot on the step ladder, the ladder legs separated, spreading outwards and the ladder collapsed. Plaintiff fell and landed with all of his weight on top of a ladder rung. Plaintiff's shin began to swell and he had a cut over his shin bone.

GSA was responsible for allowing a faulty ladder to be put to use. Plaintiff states the ladder was clearly modified, since a nut and bolt were used to replace a worn factory rivet. After Plaintiff's accident, the defective ladder was destroyed; GSA also removed two other ladders from service and replaced them with new ones.

### B.   Treatment of Leg Injury

Plaintiff notified his supervisor of the injury, and after about thirty minutes Plaintiff was taken to the Jail medical provider, CFMG. Nurse Joe C. examined Plaintiff's shin. Plaintiff was given a two-inch bandage for the cut on his leg and told to keep his leg elevated overnight. Plaintiff was allowed to "lay in" the next day. The day after, Plaintiff returned to work, and after his fourth hour of work his leg was swollen and in pain. A large bump appeared on the area where Plaintiff's skin was broken and seemed to get bigger. Plaintiff was returned to medical, where he was examined by Nurse Barbara. Barbara informed Plaintiff that he had an abscess filled with puss and that she would administer local anesthesia so that she could lance it. After Barbara made the first incision and began squeezing, no puss came out, only blood. Barbara told Plaintiff that he had a hematoma, and not an abscess, and that she would need to pack the incision. She told Joe C. to give Plaintiff a shot of antibiotics in his left buttock. Barbara explained

4

that she did not want to cover the incision but rather allow it to get air. She said she would see Plaintiff in two days, and Plaintiff was cleared to return to work the following day. Barbara prescribed Plaintiff aspirin twice a day for the pain, as well as antibiotics.

Plaintiff was supposed to receive wound care every day once he got off work and showered. However, he did not receive any wound care for four days, and was denied gauze pads and tape so that he could change his own bandages. After four days Plaintiff was finally given fresh bandages.

Barbara failed to provide the appropriate level of care when she misdiagnosed the bump on Plaintiff's leg as an abscess when it was in fact a hematoma. She therefore made an incision into Plaintiff's leg that was not required. This unnecessary incision "set everything in motion." Plaintiff states that it was Barbara's responsibility to send Plaintiff to a worker's compensation doctor. Furthermore, Barbara was aware that Plaintiff worked in unsanitary conditions, yet still cleared him to return to work. Plaintiff claims Barbara should have taken extra precautionary measures to ensure that Plaintiff's wound stayed protected. Since she did not, Plaintiff's leg wound became infected five times in a six month period.

During the six month period after the injury, Plaintiff was seen by Defendant Tonya. Tonya would not give Plaintiff bandages, stating that his wound needed to breathe. Tonya recommended Plaintiff elevate his leg at night and use a cold compress. Plaintiff was prescribed a ten day cycle of antibiotics for infection and ibuprofen for the pain.

During the same six month period, Plaintiff was also treated by Joe C. He supplied Plaintiff with antibiotic ointment, gauze pads, and an ace bandage. Plaintiff was directed to wash the infected area and apply the ointment and gauze pads once a day. After a week, Plaintiff was seen by Defendant Sonny Bassi, who told Plaintiff that he should never have been instructed to put ointment on an open infection and then wrap it up, since such wounds needed to remain dry and be able to breathe. Plaintiff was started on another round of antibiotics. Plaintiff states that no matter what was done, the infection

1 kept spreading until the entire lower portion of his left leg was left with deep, dark scars.

2 After Truffa saw Plaintiff's leg, he ordered that Plaintiff be treated by "workman's comp." Even now, two years later, Plaintiff still experiences pain and swelling in his injured leg. Plaintiff reports he is still fighting with worker's comp to get treatment, and CFMG will not do anything to treat Plaintiff now since his is a worker's comp case.

### C. Exposure to Environmental Hazards

Defendants Dailey, Blake, and Truffa instructed Plaintiff to remove the old flooring throughout the Jail and install new flooring. Over a four year period, Plaintiff removed hundreds of square feet of vinyl flooring and glue and replaced it with new flooring. He also removed over 2,000 square feet of acoustic fiberglass ceiling tiles and glue. Dailey, Truffa, and Blake all knew that the old flooring and ceiling tiles contained asbestos, since the flooring was more than 60 years old, and prior to 1970 all flooring contained asbestos. Furthermore, the flooring at the Jail had been previously tested by an environmental agency and was found to contain asbestos. The ceiling tile dated back to 1954, and was also installed during a time when all ceiling tiles contained asbestos.

Plaintiff was also forced to remove the asbestos that was used to wrap the water pipes in many areas, and had to work in pipe wells repairing plumbing, which also contained massive amounts of asbestos. Dailey, Truffa, and Blake had access to and were in a position to provide Plaintiff with safety equipment, such as a respirator. After Plaintiff complained, Deputy Kunuk told Plaintiff that all of the areas in which Plaintiff was required to work contained asbestos. When Plaintiff complained to Defendants, he was told not to worry about it.

However, two hours after Plaintiff complained, Truffa told Kunuk and Silva to post warnings in all of the areas affected by asbestos. Plaintiff states Defendants should have hired a qualified company to remove the asbestos, rather than forcing an inmate to do it. There are documented complaints made by deputies to the Jail administration about the presence of asbestos.

Plaintiff was also tasked with removed old paint from all of the metal window

frames using high speed sanders, and was therefore exposed to lead paint. Plaintiff was only provided a N-95 dust mask, which is not meant for this sort of work. Plaintiff also had to do welding projects, and the heat from the welder would burn the old paint, causing lead paint fumes to enter the atmosphere. Plaintiff has suffered chronic headaches for the past three years, which he attributes to the lead paint. However, despite Plaintiff's requests, he has never undergone testing to check for levels of exposure to lead paint and asbestos.

Plaintiff alleges violations of the Eighth and Fourteenth Amendments. He seeks compensatory and punitive damages.

## VI. Discussion

### A. Supporting Documentation

Plaintiff reports that he has over 200 pages of documents supporting the claims stated herein, but lacks the financial resources to photocopy these documents and send them to the Court.

A civil rights complaint must be "complete in and of itself without reference to any other pleading, attachment, or document." Micenheimer v. Soto, No. CV 13-3853-CJC (JEM), 2014 WL 2931111 (C.D. Cal. June 27, 2014); see also Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc). Furthermore, at the pleading stage, all factual allegations are taken as true. Iqbal, 556 U.S. at 678. Thus, Plaintiff need not refer to outside documents to support his claims. Plaintiff can sufficiently plead his case without reference to these documents.

### B. Municipal Entity Liability

Plaintiff sues the CFMG, GSA, and the Stanislaus County Jail. He thus appears to make a Monell claim. Plaintiff was previously advised that in order to make such a claim, he must point to a policy or practice attributable to the County, or provide facts demonstrating the County knew of, and blatantly ignored, the constitutional violations committed by its entities. Plaintiff has failed to provide said facts. Therefore, all claims against CFMG, GSA, and the Jail will be dismissed, albeit with one final opportunity to

amend.

   **B.    Conditions of Confinement**

Plaintiff claims Defendants violated the Eighth Amendment when they failed to properly treat his leg injury and subjected him to unsafe working conditions. However, Plaintiff reports that he is a pre-conviction inmate—thus, the Eighth Amendment does not apply to him. Instead, the Court will analyze Plaintiff's allegations under the Fourteenth Amendment due process clause, which protects pretrial detainees. Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003).

Firstly, the standard applicable to a pretrial detainee's claim for conditions of confinement and inadequate medical care under the Fourteenth Amendment is presently not clear. In the past, such claims were subject to the same state of mind requirement as an Eighth Amendment violation, i.e., subjective and deliberate indifference to a substantial risk of serious harm. See Clouthier v. Cty. of Contra Costa, 591 F.3d 1232 (9th Cir. 2010). However, that holding was called into question by the United States Supreme Court in a Fourteenth Amendment excessive force case, Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). Most recently, the Ninth Circuit extended the Kingsley rationale to a Fourteenth Amendment failure-to-protect claim. Castro v. Cty. of Los Angeles, No. 12-56829, 2016 WL 4268955, at *7 (9th Cir. Aug. 15, 2016) (en banc) (slip op). Although Castro did not expressly extend its holding to other Fourteenth Amendment violations, the Court sees no reason why the same rationale should not apply to other Fourteenth Amendment conditions of confinement and medical care claims.

Accordingly, in order to proceed on such claims, Plaintiff must allege "(1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct

8

obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries." Id. With respect to the third element, the defendant's conduct must be "objectively unreasonable." Id. (citing Kingsley, 135 S. Ct. at 2473).

### 1. Medical Care Claims

Plaintiff alleges that the failure of CFMG staff, namely Nurses Barbara and Joe C and practitioners Tonya and Bassi, to properly diagnose and treat his leg injury constituted objective deliberate indifference. The Court disagrees. According to Plaintiff, he was immediately seen by medical personnel when he sustained his injury, and continued to be treated at regular intervals over the next six months. That he was misdiagnosed with an abscess, prescribed conflicting treatment plans, and was ultimately left with a scar, while unfortunate, are all of little consequence. Plaintiff has not demonstrated that any medical provider's decisions put Plaintiff at risk of suffering serious harm, or that he or she acted unreasonably in light of that perceived risk. It is unlikely that Plaintiff's medical care claims can be cured through amendment.

### 2. Faulty Ladder Claim

Likewise, Plaintiff's fall from the faulty ladder appears to have been no more than an unfortunate accident. He reports that shortly after his accident, the offending ladder was destroyed, and several older ladders were replaced with new ones. Plaintiff provides no evidence to support his claim that any Defendants "knew" the particular ladder Plaintiff used posed a high risk of malfunctioning, yet chose to issue the ladder to Plaintiff anyway. The mere fact that the ladder was old, or had been previously repaired, is insufficient to show that it was therefore dangerous. It is unlikely that any amendment could cure these claims.

### 3. Asbestos and Lead Exposure Claims

Finally, while the Court acknowledges that prolonged exposure to environmental hazards such as asbestos or lead could cause a serious risk to human health, Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995), there is insufficient evidence showing that any Defendant made an intentional decision with regards to Plaintiff's working conditions

1  that placed Plaintiff at risk of suffering such harm. Accepting as true Plaintiff's allegation
2  that the Jail contained high levels of asbestos and lead paint, there is insufficient support
3  for Plaintiff's claim that the named Defendants were responsible for exposing Plaintiff to
4  those contaminants. He claims that Deputy Kunuk knew about the asbestos, and that an
5  unspecified environmental report verified the presence of asbestos, but this information is
6  presented in a vacuum, and it is not clear how the named Defendants should have been
7  aware of it. Even if, as Plaintiff claims, he complained to Defendants about the asbestos
8  and they responded not to worry about it, Plaintiff reports that Defendant Truffa posted
9  warnings about asbestos shortly after Plaintiff's complaint, demonstrating that Truffa did,
10 at some point, take some action pursuant to Plaintiff's complaint.

Indeed, there is little support for Plaintiff's claim that Truffa, Blake, and Dailey knew of hazards posed by the asbestos and lead other than Plaintiff's own speculation. Nor is not clear how each Defendant was in a position to abate the risk Plaintiff allegedly faced, but failed to. Plaintiff's complaint does not explain what role each Defendant played, if any, with respect to jail maintenance and repairs, inmate work assignments, or the provision of safety equipment—Plaintiff merely states that these Defendants gave him work assignments without proper safety equipment.

The Court will dismiss Plaintiff's claims regarding the asbestos and lead exposure. However, these claims may be curable through amendment. Should Plaintiff choose to amend, he must provide more than conclusory allegations that Defendants Truffa, Dailey, and Blake knew about the risk that Plaintiff would be exposed to unreasonable levels of asbestos and lead paint yet failed to abate them. Plaintiff must also plead more detailed facts regarding the actual actions or omissions of each Defendant when it came to assigning Plaintiff to tasks, providing him with protective gear, and addressing Plaintiff's concerns about the asbestos and lead exposure risks.

**VII.  Conclusion**

Plaintiff's first amended complaint fails to state a cognizable claim. The Court will provide Plaintiff a final opportunity to file an amended complaint, if he believes, in good

faith, he can cure the identified deficiencies. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). If Plaintiff chooses not to amend, and instead wishes to voluntary dismiss his case without prejudice, he must so notify the Court.

The Court advises Plaintiff an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's request for counsel (ECF No. 11) is DENIED;
2. Plaintiff's request for an extension of time (ECF No. 12) is DENIED;
3. Plaintiff's first amended complaint (ECF No. 10) is DISMISSED with leave to amend;
4. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his complaint filed April 20, 2017;
5. Within **thirty (30) days** from the date of service of this order, Plaintiff must file a second amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal; and
6. If Plaintiff fails to file a second amended complaint or notice of voluntary dismissal, the undersigned will recommend this action be dismissed, with prejudice, for failure to state a claim and failure to obey a court order.

IT IS SO ORDERED.

Dated: May 15, 2017 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE